## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTINA ANDERSON,           )
                              )
      Plaintiff,              )          Civil Action No. 2:12-cv-00822
                              )
v.                            )
                              )          Judge Mark R. Hornak
KOHL'S CORP.,                 )
                              )
      Defendant.             )

## **MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

Christina Anderson ("Anderson") filed this suit under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), alleging that she is a disabled person under that statute and that Defendant's retail stores are public accommodations under the ADA which fail to comply with ADA standards by what she considered to be negatively disparate product placement and pricing of "plus-sized" women's clothing.[1]

Before the Court is a Motion filed by Defendant Kohl's Corporation to dismiss all of her claims for lack of standing on her part to bring them, and for a failure to state a claim. The Court has considered the parties' moving, opposition and reply papers, and for the reasons that follow, the Court grants Defendant's Motion to Dismiss for lack of standing, without prejudice. Plaintiff shall have 30 days from the date of the Order to file an Amended Complaint supporting any factual and legal basis for Anderson's individual standing to prosecute this action, consistent with this Opinion. Further, upon consideration of the Motion to Dismiss for failure to state a claim, and after conducting a review to determine whether another amended complaint would be

---

[1] Anderson has filed a parallel suit containing essentially identical claims against another clothing retailer at Civ. Action 12-cv-556. Thus, much of the discussion in this Opinion, in which the Defendant is represented by distinct counsel, mirrors the Opinion in that case. This Opinion should be read in conjunction with that Opinion.

futile, the Court concludes that Anderson's Amended Complaint fails to state a claim for relief under Title III of the ADA, except to the extent that she seeks injunctive and/or declaratory relief due to Kohl's alleged failure to remove certain barriers, 42 U.S.C. § 12182(b)(2)(A)(iv). All claims but that one are dismissed with prejudice.

## I. BACKGROUND

In assessing the plausibility of the allegations of Anderson's Complaint, we must take her allegations as true. According to her Complaint, Plaintiff is "disabled" as defined by the ADA, in that she has a qualifying impairment that interferes with a major life function. Compl. ¶¶ 13-15. More specifically, Anderson alleges that she suffers from obesity that has been caused by a thyroid disorder (hypothyroidism), arthritic damage, osteomalacia, hypertension, fibromyalgia, major depression, personality disorder, and anxiety. *Id.* ¶¶ 23-33, 43, 50-51. The Plaintiff alleges that she is obese as a symptom and result of her many health and mental conditions, and as a side effect of her use of a multitude of prescription medications. *Id.* ¶¶ 29-43. Due to her illnesses, Anderson is required to take these nine (9) medications that she says cause or contribute to her obesity. *Id.* ¶¶ 34-42, 55. Anderson alleges that her obesity is a part of her disabling condition and substantially limits life activities, including walking, standing, sitting, reaching, lifting, bending, and working. *Id.* ¶¶ 53-56.

On April 30, 2012 Plaintiff was shopping for gift items and items for her own use at the Kohl's store in Monroeville, Pennsylvania. *Id.* ¶¶ 57-58. She noticed that the selection of plus-sized clothing[2] she wanted to purchase for herself was "much smaller" than the selection available for her niece.[3] *Id.* ¶ 58. Also, the selection for her niece was located on the main floor while clothing items for her own use were in "a far corner of the uppermost level." *Id.* ¶ 59. The

---

[2] In common parlance, "plus-size clothing" refers to "clothing proportioned specifically for overweight people." Wikipedia, Plus-Size Clothing, http://en.wikipedia.org/wiki/Plus_size_clothing (last visited April 24, 2013).

[3] The Court assumes that Plaintiff's niece does not wear plus-size clothing.

2

prices on the items for her niece were lower than prices for "similar or identical items" she wanted to purchase for herself. *Id.* ¶ 60.

Plaintiff then set out to learn if the "selections available to women disabled in a way that causes or contributes to increased body size" were treated in a similar fashion in the other Kohl's stores in her area. *Id.* ¶ 61. Anderson "visited and surveyed" sixteen Kohl's stores. In Pennsylvania she surveyed stores in Monroeville, North Hills, Century III, Gibsonia, North Huntington, South Hills, Robinson Township, Cranberry, Washington, Monaca, Butler, and Altoona. *Id.* ¶ 62. She also surveyed stores in Wheeling, WV and Youngstown, Warren, and Alliance in Ohio. *Id.*

In her Complaint, Anderson alleges that the above stores are public accommodations that employ practices that violate Title III of the ADA in that they impose an illegal surcharge by charging higher prices for items based on their size, and provide separate and unequal benefits to disabled persons because the plus-sized department is in a different, less preferable part of the store than other women's clothing, is smaller than other departments, and is laid out in a way that makes it difficult for obese people to maneuver in them. *Id.* ¶¶ 57-100. Anderson seeks declaratory and injunctive relief as well as monetary damages and a civil penalty. *Id.* at 15-16.

Plaintiff filed her Complaint on June 18, 2012. Compl.; ECF No. 1. Defendant filed a Motion to Dismiss the Complaint on October 3, 2012. ECF Nos. 5, 6. Plaintiff filed a Response, ECF No. 7, Defendant filed a Reply, and Plaintiff filed a Sur-Reply. ECF No. 9.

## II. STANDARD

### A. Pro Se Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–21 (1972); *Brown v. City of Long Branch,* 380 F. App'x 235, 238 (3d Cir. 2010) ("*Pro se* complaints,

however, must be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers[.]'" (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). Because Plaintiff is a *pro se* litigant, this Court may consider facts and draw reasonable inferences where it is appropriate.[4]

## B. Motion to Dismiss Pursuant to 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "The District Court must accept the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In short, a motion to dismiss should be granted if a party does not allege facts which could, if established at trial, entitle him to relief. *See Fowler,* 578 F.3d at 211.

## III. DISCUSSION

Plaintiff alleges that Defendant owns and operates Kohl's stores and that they have discriminated against her, as a disabled person who has physiological disorders underlying her obesity. However, the Court may not reach the question of whether Plaintiff is entitled to relief unless and until it is satisfied that Plaintiff has standing to bring the suit in the first instance. Accordingly, the Court turns to an inquiry into Plaintiff's standing to sue for injunctive relief under the ADA.

---

[4] As the Court noted in Civ. Action 12-cv-556, Anderson's pleadings are anything but inartful. They are literate, logical, replete with statutory and regulatory references, and look like they were prepared with the help of a good lawyer. If Ms. Anderson prepared them on her own, more power to her. If a lawyer helped Anderson with them, he or she needs to enter their appearance on her behalf, as "ghostwriting" is not permitted. *Snyder v. Daugherty,* No. 2:11-CV-00879, 2012 WL 4506577, at *19 (W.D. Pa. Sept. 28, 2012); *see also Delso v. Trustees For Ret. Plan For Hourly Emps. of Merck & Co., Inc.,* No. 04-3009 AET, 2007 WL 766349, *15-16 (D.N.J. Mar. 6, 2007). This admonition is a one-time only "free pass" for any such counsel to now step forward.

4

## A. Standing

"In order to set forth a viable claim in federal court, a plaintiff is required to satisfy both the Article III constitutional minimum of a 'case or controversy' and any prudential considerations set by the courts." *Disabled Patriots of Am., Inc. v. City of Trenton*, No. 07 CV 3165(FLW), 2008 WL 4416459, at *2 (D.N.J. Sept. 24, 2008); *see also Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997) ("Standing is a threshold jurisdictional requirement, derived from the 'case or controversy' language of Article III of the Constitution.").

The Supreme Court has held that in order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Doe v. Nat'l Bd. of Med. Examiners*, 210 F. App'x 157, 159 (3d Cir. 2006). "Standing also encompasses a prudential component whereby courts decline to exercise jurisdiction over litigants attempting to assert the rights of another, claiming generalized grievances more appropriately addressed in the representative branches, or where a litigant's complaint falls without the zone of interests protected by the law invoked." *Dempsey v. Pistol Pete's Beef N Beer, LLC*, No. 08-5454RBKAMD, 2009 WL 3584597, at *4 (D.N.J. Oct. 26, 2009) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). The party invoking federal jurisdiction bears the burden of establishing standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

Under Title III of the ADA, private plaintiffs may not obtain monetary damages and therefore only prospective injunctive relief is available. *Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320, at *4 (E.D. Pa. June 14, 2012). Anderson's requests for monetary damages and a civil penalty are therefore improper, and are dismissed with prejudice. Compl. ¶¶ 15-16. Anderson, however, may seek injunctive relief. *Id.*

Because the remedy for a private ADA Title III violation is injunctive relief, courts look beyond the alleged past violation and consider the possibility of future violations. Plaintiffs seeking prospective injunctive relief "must demonstrate a 'real and immediate threat' of injury in order to satisfy the 'injury in fact' requirement." *Access 4 All, Inc. v. Absecon Hospitality Corp.*, No. 04-6060 JEI, 2006 WL 3109966, at *5 (D.N.J. Oct. 30, 2006) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 103-04 (1983)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); *see also Brown v. Fauver*, 819 F.2d 395, 400 (3d Cir. 1987) (same).

Kohl's argues that Plaintiff fails to satisfy all three prongs of standing under *Lujan* because Anderson has not alleged any past or imminent harm. ECF No. 6 at 6-7. The Court will first consider whether Plaintiff has adequately pled an "injury in fact."

In Title III ADA cases in which disabled plaintiffs bring suit seeking an injunction to cure discriminatory practices, courts generally look to four factors to determine the likelihood of the plaintiff returning to the place of the alleged ADA violation, and therefore whether the threat of injury is concrete and particularized: "(1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of nearby travel." *Harty v. Burlington Coat Factory of Pa., L.L.C.*, No. 11-01923, 2011 WL 2415169, at *4 (E.D. Pa. June 16, 2011). "The

6

four-factor test is one of totality, and a finding in favor of [the plaintiff] does not require alignment of all four factors." *Id.* at *7.

First, in regard to proximity, "as the distance between a plaintiff's residence and a public accommodation increases, the potential for the occurrence of future harms decreases." *Molski v. Kahn Winery,* 405 F.Supp.2d 1160, 1163-64 (C.D. Cal. 2005). While the proximity standard is not clear cut, courts have held that a distance of over 100 miles does fail to satisfy this prong. *Trenton,* 2008 WL 4416459, at *4. Anderson claims that she surveyed 16 Kohl's stores which employ discriminatory policies and range from less than 5 miles and up to 94 miles from her residence.[5] Compl. ¶ 62. The Court finds that it is unlikely that Anderson will return to a Kohl's that is 20.9 miles away (the Kohl's at Robinson), let alone 94.1 miles away (in Alliance, Ohio), when there are Kohl's located 4.6 (Monroeville, PA) and 13.3 (West Mifflin, PA) miles from Plaintiff's residence. *See Reviello,* 2012 WL 2196320, at * 5 (proximity not established when plaintiff lived over fifty (50) miles from complained of public accommodation when another one was located within three miles of his house). This is particularly so in that Plaintiff was actually shopping at the store in Monroeville and "surveying" at all the others. Without much more, there is no basis to conclude that it is at all plausible that Plaintiff's distant proximity to the majority of the Kohl's stores she references may establish a likely intent to return to any of them, at least as to the ones she has not actually shopped.

The second factor considers a plaintiff's past patronage of Defendant's places of public accommodation to support her likelihood of return and future harm. From the face of the Complaint it is not evident that Anderson has visited each of the listed stores more than once, and does not indicate that her trip to 15 of the 16 stores was for any other purpose than to

---

[5] The distance between the Plaintiff's residence and a Kohl's store was determined by the shortest possible driving route using Mapquest (http://www.mapquest.com) and not "as the crow flies."

"survey" or test them.[6] Nor does she allege that she ever purchased anything from a Kohl's store. When a plaintiff visits a public accommodation "only once, the lack of a history of past patronage seems to negate the possibility of future injury at [that] particular location." *Molski*, 405 F. Supp. 2d at 1164. However, this presumption does not apply where the plaintiff can establish a more personalized connection to the establishment. *Id.*; *Trenton*, 2008 WL 441645, at *5. Moreover, Anderson alleges that the Kohl's stores' layout and pricing are based on corporate policy which violates the ADA, and therefore all of the stores are similarly situated. Compl. ¶¶ 64, 70-73, 81. *See Harty*, 2011 WL 2415169, at *7 ("one-time visit" satisfied factor because ADA states that a person with a disability is not required to "participate in a futile gesture" if plaintiff has actual knowledge that the defendant does not intend to comply with ADA provisions). Thus, while Anderson's only one-off visits to most of the involved Kohl's stores does not, standing alone, obviate this factor at the pleading stage, her very limited contact with them does not carry it across the goal line.

Third, and of great importance, is a plaintiff's plan to return to the place of accommodation. "[T]he plaintiff must put forth a definitive, uncontested intent to return before filing the complaint to establish standing." *Trenton*, 2008 WL 4416459, at *6. A plaintiff's intention to return to defendant's place of public accommodation "'some day' . . . without any description of concrete plans, or indeed even any specification of *when* the some day will be-do not support a finding of the" requisite actual or imminent injury. *Lujan*, 504 U.S. at 564. A plaintiff's general allegation of a desire to return is essentially the equivalent of pleading to return "some day." *Dempsey*, 2009 WL 3584597, at *5. Anderson alleges in her Complaint no

---

[6] Anderson argues in her Sur-Reply that she "has been shopping at several different Kohl's stores for many years." ECF No. 9 at 3. However, Anderson cannot be deemed to amend her Complaint with facts alleged in her opposition papers. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

facts that evidence a definitive plan to return to any of the stores, especially those beyond the one (1) store where she actually shopped, and therefore fails to satisfy this factor.[7] *See Id.* at *5 (plaintiff fails to allege "sufficient facts to demonstrate that he suffers from a real and immediate threat of injury" because he does not allege that he will ever return to the defendant's place of public accommodation).

Finally, Anderson fails to plead any facts showing her frequency of travel in the areas of the listed stores. While the Court might presume that Plaintiff travels frequently in the area of the Kohl's in Monroeville because her residence is less than five (5) miles away, the Court is unable to make the same presumption for those ten (10) stores twenty (20) miles and greater away from her home. Moreover, Plaintiff fails to plead facts that would demonstrate either a preexisting business or familial tie within the areas of any of the Kohl's which lie further than Monroeville from her residence. *Harty*, 2011 WL 2415169, at *9 (frequency of nearby travel sufficient where plaintiff alleged that he traveled to city "to attend gun shows and to maintain his business and client contacts."); *see also Wilson v. Costco Wholesale Corp.*, 426 F. Supp. 2d 1115, 1122 (S.D. Cal. 2006) ("fact that Plaintiff travels to San Diego at least three or four times a year also cannot establish standing.").

Considering all of these factors, the Court finds that Plaintiff's Complaint does not sufficiently allege an injury-in-fact to establish that she has standing to assert her claims. The failure to allege a definite plan to return as well as the other factors "is more than one of mere form as without this information the Court is unable to evaluate the likelihood that Plaintiff will, in fact, return" to Defendant's stores. *Dempsey*, 2009 WL 3584597, at *5; *see also Reviello*,

---

[7] In her Response to Kohl's Motion to Dismiss, Anderson argues that because the goods and services "are a basic necessity of life", she "will require the good or service in the future" and that the Court "need not question that she will require a return to the Defendant's place of business." ECF No. 7 at 3. However, these allegations are not contained in her Complaint, and Anderson cannot amend her Complaint with facts alleged in her opposition papers. *Pension Ben.*, 998 F.2d at 1196.

2012 WL 2196320, at *5 (while "[a]t the pleading stage, it is not in the province of the judge to decide the credibility of the plaintiff's stated intent to return. . . . Dismissal is appropriate, however, where, as here, plaintiff makes no allegations to support a finding of an intent to return.").

Because the allegations in Plaintiff's Complaint are insufficient to satisfy the injury-in-fact requirement, the Court finds that Anderson has not carried her burden of demonstrating that she has standing to prosecute these claims and need not consider whether she has sufficiently alleged a causal connection or a redressable injury.[8] In order to determine whether allowing her to file an amended complaint to attempt to fill in these standing gaps would be futile, the Court will consider the parties' arguments regarding the Motion to Dismiss for failure to state a claim.[9]

---

[8] Whether a plaintiff may satisfy the intent to return requirement if she visits the establishment *solely* as a tester has not been addressed head-on by the Third Circuit. *Trenton*, 2008 WL 4416459, at *3, n.2; *see also Harty*, 2011 WL 2415169, *1, n.5 ("Testers are qualified individuals with disabilities who visit places of public accommodation to determine their compliance with Title III."). Some Courts allow for tester standing under the ADA. *Tandy v. City of Wichita*, 380 F.3d 1277, 1287 (10th Cir. 2004) ("testers have standing to sue under *Title II* of the ADA.") (emphasis added); *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1069 (9th Cir. 2009) ("we accord standing to individuals who sue defendants that fail to provide access to the disabled in public accommodation as required by the Americans with Disabilities Act, even if we suspect that such plaintiffs are hunting for violations just to file lawsuits."); *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 710 (W.D. Tex. 2010) ("Thus, a disabled tester who experiences the discrimination prohibited by the ADA has standing to seek relief."). *Cf. Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 415 n.3 (11th Cir. 2011) (noting that the 11th Circuit has never addressed "tester standing" under the ADA and deciding to "not address 'tester standing' here."); *Norkunas v. Park Rd. Shopping Ctr., Inc.*, 777 F. Supp. 2d 998, 1005 (W.D.N.C. 2011) (with regard to tester standing, "the naked assertion of a desire to return to a defendant establishment for the sole purpose of confirming ADA-compliance, without more, is insufficient to establish standing."); *Kramer v. Midamco*, 656 F. Supp. 2d 740, 747-48 (N.D. Ohio 2009) ("a plaintiff's claim that she visited the facility as a tester and intends to visit the Facility to 'verify its compliance or non-compliance with the ADA, does little to support [her] allegation that [s]he is truly threatened by an immediate future injury. . . . [An] ADA plaintiff cannot manufacture standing to sue in a federal court by simply claiming that [s]he intends to return to the Facility.") (citations and quotation marks omitted).

The Court concludes that it would be improvident to decide the substantial issue of "tester" standing under Title III of the ADA in this case. While the surviving claim in this case may be important to affected individuals, its scope is quite modest. Any injunctive relief granted in this case would relate solely to the width of the aisles within the Kohl's stores. Moreover, in her response papers, Anderson alleges that she has a history of being a Kohl's customer. Assuming that Plaintiff will sufficiently allege and support this assertion in her next Amended Complaint, as well as other necessary appropriate factual elements, pleading those facts may be sufficient to demonstrate standing as a customer, obviating any necessity to consider "tester" standing in this context.

[9] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does *not* seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.")

Because one of her claims appears to surmount the rather low Motion to Dismiss bar, the Court will give Anderson 30 days to file an Amended Complaint consistent with this Opinion to demonstrate standing. In that regard, Anderson will be required to delineate the specific circumstances as to when, why, and how she would return to each of the sixteen (16) specific Kohl's stores that she has identified, all subject to the good faith pleading standard of Fed. R. Civ. P. 11.[10]

### B. Failure to State a Claim

Title III of the ADA prohibits disability discrimination in places of public accommodation, and sets forth as a "general rule" that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). In studying the need for such legislation, Congress found that "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress noted that the many forms such discrimination takes include "outright intentional exclusion" as well as the "failure to make modifications to existing facilities and practices." 42 U.S.C. § 12101(a)(5).

To state a claim under Title III of the ADA, a plaintiff must show "(1) discrimination on the basis of a disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by the public accommodation's owner, lessor or operator." *Harty*, 2011 WL 2415169, at *9.

---

[10] Anderson's standing showings under each of the factors noted falls demonstrably short. No matter the sincerity of her belief that she was injured as alleged, under the applicable legal tests, she has a lot of pleading ground to make up in order to maintain this action.

The primary bone of contention between the parties is whether Plaintiff has adequately

pled "discrimination on the basis of a disability . . . in the full and equal enjoyment" of a public

accommodation.[11] While Kohl's does not argue that Plaintiff is not disabled as defined by the

ADA, the Court must consider this issue in order to determine if allowing another amended

complaint would be futile.

### 1. Obesity as a Disability

The Third Circuit has yet to decide if obesity is a disability under the ADA. However,

lower courts in our Circuit have suggested that obesity caused by an underlying physiological

disorder is a disability under the ADA. See Lescoe v. Pa. Dept. of Corrs. SCI-Frackville, 464 F.

App'x 50, 53 (3d Cir. 2012) ("this Court has not definitively reached a position regarding

whether obesity is a disability under the ADA that limits a major life activity"); Ni v. Rite Aid of

N.J., No. 10-1522, 2010 WL 2557523, at *3 (D.N.J. June 22, 2010) (noting that obesity is not

considered a disability except for in the rare instances in which it is caused by a physiological

disorder); Marsh v. Sunoco, Inc., No. 06-CV-2856, 2006 WL 3589053, at *4 (E.D. Pa. Dec. 6,

2006) ("It repeatedly has been held that excess weight or obesity, except in special instances

where they relate to a physiological disorder, are not 'physical impairments' within the meaning

of the statutes.").[12]

---

[11] Kohl's also does not contest that its stores are places of public accommodation. See 28 C.F.R. § 36.104 ("Place of public accommodation means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories-- . . . (5) A bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment. . .").

[12] Other Circuits have held that obesity caused by an underlying physiological condition is a disability under the ADA. See E.E.O.C. v. Watkins Motor Lines, Inc., 463 F.3d 436, 441 (6th Cir. 2006) (holding that non-physiological morbid obesity is not an impairment under the ADA, but morbid obesity caused by a physiological disorder may be an ADA impairment); Cook v. State of Rhode Island, Dep't of Mental Health, Retardation, & Hosps., 10 F.3d 17 (1st Cir. 1993) (court finding an ADA impairment where an obese woman established through expert testimony that her obesity was caused by a physiological condition); Francis v. City of Meriden, 129 F.3d 281, 286 (2d Cir. 1997) (holding, under the ADA, "obesity, except in special cases where the obesity relates to a physiological disorder, is not a 'physical impairment' within the meaning of the statutes"). Cf. E.E.O.C. v. Res. for Human Dev., Inc., 827 F. Supp. 2d 688, 693-94 (E.D. La. 2011) (holding that severe obesity was disability under ADA and did not require

However, Congress amended the ADA by passing the ADA Amendments Act of 2008 ("ADAAA"). ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008).[13] Congress did this in order to reinstate broad ADA coverage of individuals because of its conclusion that the Supreme Court in *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184, 185 (2002) and *Sutton v. United Airlines, Inc.,* 527 U.S. 471, 499 (1999), had improvidently narrowed the scope of protection intended to be afforded in the ADA. ADAAA, 122 Stat. 3553. Congress thus instructed the courts that they were interpreting the statute too restrictively. *Id; see also Lowe v. Am. Eurocopter, LLC,* No. 1:10CV24-A-D, 2010 WL 5232523, at *7 (N.D. Miss. Dec. 16, 2010) ("The ADAAA appears to have legislatively pre-empted the Supreme Court's past definitions of 'substantially limits,' stating that the Court's standard was 'too high,' and that 'substantially limits' should be more broadly interpreted."). For instance, "Congress explicitly rejected *Toyota* and *Sutton* in an effort to promote a less restrictive interpretation of 'disability' under the ADA." *Fleck v. WILMAC Corp.,* No. 10-05562, 2011 WL 1899198, at *5 (E.D. Pa. May 19, 2011).

Under the ADA, as amended by the ADAAA, a disability is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1).[14] In drafting Title III, Congress painted with a broad brush and then directed

---

proof of physiological basis, and that "a physiological cause is only required when a charging party's weight is within the normal range").

[13] These amendments have already taken effect and therefore the language of the ADA (in the U.S. Code) has been modified to reflect these changes.

[14] The ADA details a non-exhaustive list of what constitutes a major life activity. Furthermore, with the implementation of the ADAAA, major bodily function limitations are now considered a major life activity. The ADA defines major life activities to include:

> (A) In general. For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

the Attorney General to promulgate regulations to implement the law. 42 U.S.C. § 12186(b).[15]
The Regulations define a physical or mental impairment as:

> (i) Any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive; genitourinary; hemic and lymphatic; skin; and endocrine;
> (ii) Any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities . . .

28 C.F.R. § 36.104.

This Court is unaware of any district court in our Circuit that has decided whether obesity may be considered a disability under the ADA as amended by the ADAAA. Other courts have held that obesity may be a disability under the ADAAA. *See Lowe*, 2010 WL 5232523, at *6 ("the Court is unable to say that obesity can never be a disability under the ADA, especially given" the ADAAA); *BNSF Ry. Co. v. Feit*, 281 P.3d 225, 231 (Mont. 2012) (holding that the state's Human Rights Act was to be interpreted consistently with federal discrimination laws, and concluding that, under the ADAAA, "[o]besity that is not the symptom of a physiological disorder or condition may constitute a 'physical or mental impairment' within the meaning of Montana Code Annotated § 49–2–101(19)(a) if the individual's weight is outside 'normal range' and affects 'one or more body systems' as defined in 29 C.F.R. § 1630.2(h)(1).").

Considering court decisions both before and after the ADAAA[16] in conjunction with Congress's intent to broaden the scope of the definition of a disability through the Amendment,

---

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.
(B) Major bodily functions. For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.
42 U.S.C. § 12102(2).

[15] These regulations are found at 28 C.F.R. Ch. I, §§ 36.101 *et seq.* ("Regulations").

for purposes of the matters now before the Court, we cannot definitionally exclude obesity when caused by an underlying physiological condition as a disability under the ADA.[17]

### 2. Count I – Alleged Improper Surcharge

In Count I of her Complaint, Anderson alleges that Kohl's stores acted discriminatorily in violation of 28 C.F.R. § 36.301(c) by effectively imposing a "surcharge" on women's plus-sized clothing items. Compl. ¶¶ 63-66. Subsection 28 C.F.R. § 36.301(c) states:

> (c) Charges. A public accommodation may not impose a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids, barrier removal, alternatives to barrier removal, and reasonable modifications in policies, practices, or procedures, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

Moreover, with regard to this section, the ADA Title III Technical Assistance Manual explains that "[a]lthough compliance may result in some additional cost, a public accommodation may not place a surcharge only on particular individuals with disabilities or groups of individuals with disabilities to cover these expenses." § III-4.1400 Surcharges.

In order to evaluate whether a cost constitutes a surcharge that violates Title III of the ADA, a court considers whether it (1) is used to cover the costs of ADA-mandated measures and (2) is really a surcharge (a charge that nondisabled people would not incur). *See Dare v. Ca.*, 191 F.3d 1167, 1171 (9th Cir. 1999) (two-part inquiry to determine whether a fee violates Title II of the ADA -- (1) whether the measure for which the fee is levied is mandated by the ADA and (2) whether the fee constitutes a charge that nondisabled people would not incur); *Duprey v. State of Conn., Dept. of Motor Vehicles*, 28 F. Supp. 2d 702, 706 (D. Conn. 1998) (the following

---

[16] Because Congress intended to broaden the scope of what is considered a disability under the ADA through its Amendment, the Court finds no reason to believe that courts which recognized obesity with an underlying physiological condition as a disability prior to the ADAAA would reverse gears in light of the Amendment.

[17] Because Plaintiff specifically alleges that she has a physiological condition(s) that causes her obesity, the Court need not decide if obesity or morbid obesity without an underlying physiological disorder is also a disability under the ADAAA.

elements must be plead to be a violative surcharge "(1) that the [fee] constitutes a surcharge; (2) that the fee is imposed only on disabled persons; and (3) that the fee is used to cover the costs of ADA-mandated measures.").[18]

Plaintiff's claim fails to meet either prong. First, Kohl's is not required to carry plus-sized clothing at all. The Supreme Court explained that:

> [t]he ADA requires covered businesses to make such reasonable modifications of "policies, practices, or procedures" as are necessary to "afford" goods, services, and privileges to individuals with disabilities; but it explicitly does not require "modifications [that] would fundamentally alter the nature" of the goods, services, and privileges. § 12182(b)(2)(A)(ii). In other words, disabled individuals must be given *access* to the same goods, services, and privileges that others enjoy. The regulations state that Title III "does not require a public accommodation to alter its inventory to include accessible or special goods with accessibility features that are designed for, or facilitate use by, individuals with disabilities." 28 CFR § 36.307 (2000).

*PGA Tour, Inc. v. Martin*, 532 U.S. 661, 698 (2001).[19] *See also Ford v. Schering-Plough Corp.*, 145 F.3d 601, 613 (3d Cir. 1998) ("The purpose of the ADA's public accommodations

---

[18] The Court recognizes that these cases consider violations of 28 C.F.R. § 35.130(f) which corresponds to Title II of the ADA, whereas Anderson alleges a violation of 28 C.F.R. § 36.301(c) which corresponds to Title III of the ADA. Title II prohibits "public entities" from excluding disabled individuals from or denying them the benefits of programs, activities, or services, and from otherwise discriminating against them. *See* 42 U.S.C. § 12132. Title III prohibits discrimination or the denial of "full and equal enjoyment" of goods, services, and other benefits provided by "places of public accommodation" operated by private entities. *See* 42 U.S.C. §§ 12182. The substantive language of 28 C.F.R. § 35.130(f) is nearly identical to that of 28 C.F.R. § 36.301(c). It reads

> (f) A public entity may not place a surcharge on a particular individual with a disability or any group of individuals with disabilities to cover the costs of measures, such as the provision of auxiliary aids or program accessibility, that are required to provide that individual or group with the nondiscriminatory treatment required by the Act or this part.

28 C.F.R. § 35.130. *See also PGA Tour, Inc. v. Martin*, 532 U.S. 661, 681 (2001) (comparing analysis in Title III to "analogous context of Title II."); *Klingler v. Dir., Dept. of Revenue, State of Mo.*, 433 F.3d 1078, 1082 *opinion supplemented on reh'g*, 455 F.3d 888 (8th Cir. 2006) ("[28 C.F.R. § 35.130(f)] does not distinguish between Title II and Title III obligations, but prohibits public entities from singling out the disabled to pay the cost of any ADA compliance efforts.").

[19] *See also Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 560 (7th Cir. 1999) (Posner, C.J.) ("The common sense of the statute is that the content of the goods or services offered by a place of public accommodation is not regulated. A camera store may not refuse to sell cameras to a disabled person, but it is not required to stock cameras specially designed for such persons. Had Congress purposed to impose so enormous a burden on the retail sector of the economy and so vast a supervisory responsibility on the federal courts, we think it would have made its intention clearer and would at least have imposed some standards. It is hardly a feasible judicial function to decide whether shoestores should sell single shoes to one-legged persons and if so at what price, or how many Braille books the Borders or Barnes and Noble bookstore chains should stock in each of their stores.").

requirements is to ensure accessibility to the goods offered by a public accommodation, not to alter the nature or mix of goods that the public accommodation has typically provided. In other words, a bookstore, for example, must make its facilities and sales operations accessible to individuals with disabilities, but is not required to stock Brailled or large print books. . . . likewise an insurance office must be physically accessible to the disabled but need not provide insurance that treats the disabled equally with the non-disabled."); *Ariz. ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 671 (9th Cir. 2010) ("whatever goods or services the place provides, it cannot discriminate on the basis of disability in providing enjoyment of those goods and services. This language does not require provision of different goods or services, just nondiscriminatory enjoyment of those that are provided."). If the measure is "not required under the ADA, the inquiry ends" because the regulation only forbids surcharges for ADA "required" measures. *Dare*, 191 F.3d at 1171.

Secondly, the alleged higher cost of plus-sized goods here is not a "surcharge" because it is not imposed only on disabled persons. There are no allegations that disabled persons are charged a higher price than non-disabled persons for the same plus-sized clothing, or that only disabled persons wear (or even purchase) plus-sized clothing. Kohl's argues that it "charges all individuals the same price for plus-sized clothing -- regardless of whether the consumer is disabled or non-disabled." ECF No. 6 at 8. Plaintiff does not contest this point, and any price difference between plus-sized and other women's clothing is not a "surcharge" defined as being improper in the ADA's regulations. *See also Dare*, 191 F.3d at 1171 ("If nondisabled people pay the same fee for an equivalent service, the charge to disabled people would not constitute a surcharge on a 'required' measure.").

Anderson fails to allege that any purported price differential is a "surcharge" on only disabled persons in order to cover the cost of ADA compliance. The allegations as pled simply

fail to allege a violation of the ADA, and this claim is dismissed with prejudice, as any amendment would be futile in these circumstances.

### 3. Counts II and III – Alleged ADA "Separate Benefit" and "Unequal Benefit" Claims

In Counts II and III, Anderson alleges that Kohl's violated the ADA's prohibition against a "separate benefit" and that the Defendant provided an "unequal benefit" to disabled persons by locating the plus-sized clothing in a separate, and sometimes "isolated", area apart from other adult female clothing as well as away from "other areas of the store that would likely be of interest to women who are shopping for clothing." Compl. ¶¶ 67-100. Secondly, Plaintiff argues that the spacing and "selection of items" offered in the plus-sized section is "much smaller" than the other women's clothing sections. *Id.* ¶¶ 94-99.[20]

Title III's general rule prohibits public accommodations from discriminating against individuals because of their disabilities. 42 U.S.C. § 12182(a). More specifically, Title III requires public accommodations to provide "[g]oods, services, facilities, privileges, advantages, and accommodations . . . in the most integrated setting appropriate . . . ," 42 U.S.C. § 12182(b)(1)(B), and prohibits places of public accommodation from providing people with disabilities with services, facilities, privileges, advantages, or accommodations that are "not equal to", or are "different or separate" from those provided to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii)-(iii).[21] In other words, "Title III requires all places of public accommodation to have access to the physical environment of the accommodation." *Cornilles v. Regal Cinemas, Inc.*, No. 00-173-AS, 2002 WL 31440885, at *2 (D. Or. Jan. 3, 2002).

---

[20] Because this claim is essentially an assertion that Kohl's does not sell enough of something it need not sell it at all, it also fails under the precedent as set forth above.

[21] "Providing services in the most integrated setting is a fundamental principle of the ADA." H.R. Rep. 101–485, pt. 2, at 102 (1990), *reprinted* in 1990 U.S.C.C.A.N. 303, 385.

Anderson's first challenge is as to the location of the plus-sized women's clothing department within Kohl's stores. Plaintiff alleges in a conclusory fashion that the "placement of the plus sized department is inconvenient" and "less favorable", and that it is "more difficult to reach in that it is much farther from main entrances." Compl. ¶¶ 81-93. Anderson describes the plus-sized section's placement away from certain departments, including purses, jewelry, and other sections, and its proximity to public restrooms and staff lounges as "insulting." *Id.* 79, 85-86, 93.

However, Anderson does not allege that she was unable to access the plus-sized department because of its location, nor does she allege that she was relegated to shop only in the women's plus-sized clothing section on the basis of her disability. Anderson's claims fail because she does not plead (nor can her Amended Complaint, viewed in the most favorable light as to her, be construed to plead) that she was denied access to any goods or services that the Defendant provides to non-disabled customers anywhere in its stores. In fact, Plaintiff states in her Response that she "does not claim that she was denied access to any particular area of Kohl's." ECF No. 7 at 2. *Gonzales v. H.E. Butt Grocery Co.*, 226 F. App'x 342, 344 (5th Cir. 2007) (dismissing Title III claim because defendant did not deny access to its goods or services); *McNeil v. Time Ins. Co.*, 205 F.3d 179, 186 (5th Cir. 2000) ("how can an owner, etc., deny the full and equal enjoyment of the goods or services that he offers? By denying access to, or otherwise interfering with, the use of the goods or services that the business offers."); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 157 (2d Cir. 2008) (plaintiff "cannot experience 'full and equal enjoyment' of defendant's services if she is unable to access the list of the services available to her."); *Cornilles*, 2002 WL 31440885, at *2 (Title III requires places of public accommodation to provide access to their goods and services). Defendant's placement of the plus-sized clothing department may have denied Anderson the ability to peruse and then purchase such clothing at

what she would define as the most preferable spots within a Kohl's store, but Plaintiff was not deprived of generalized access to all of Defendant's merchandise in any manner that Congress identified to be violative of the ADA.

However, Plaintiff also alleges in a more truncated fashion that the "aisles are narrower" in the Defendant's plus-sized women's clothing departments. Compl. ¶ 94. More specifically, Anderson asserts that the aisles in the "average departments are four to five feet wide" but the "aisles in the plus sized departments are often no more than two feet wide," which is "less accommodating." *Id.* According to 42 U.S.C. § 12182(b)(2)(A)(iv), discrimination includes "a failure to remove architectural barriers, and communication barriers that are structural in nature . . . where such removal is readily achievable."[22] Thus, Title III of the ADA requires places of public accommodation to provide accessible paths between movable racks to the extent that it is "readily achievable"[23] to do so. *Colo. Cross-Disability Coal. v. Too (Del.), Inc.*, 344 F. Supp. 2d

---

[22] "As to Section 12182(b)(2)(A)(iv), Congress was explicit: 'The section may require the removal of physical barriers, *including those created by the arrangement or location of . . . movable structures [such] as* furniture, equipment and *display racks.* For example, a restaurant may need to rearrange tables and chairs or *a department store may need to adjust its layout of display racks* and shelves.'" *Colo. Cross-Disability Coal. v. Too (Del.), Inc.*, 344 F. Supp. 2d 707, 710-11 (D. Colo. 2004) (quoting S. Rep. No. 116, 101st Cong., 1st Sess., at 66 (1989); H.R. Rep. No. 485, 101st Cong., 2nd Sess., pt. 2, at 110, *reprinted in* 1990 U.S.C.C.A.N. 303, 393 ("H.R. Rep. No. 485(III)")).

[23] *See* 28 C.F.R. § 36.104, which provides:
> Readily achievable means easily accomplishable and able to be carried out without much difficulty or expense. In determining whether an action is readily achievable factors to be considered include--
> (1) The nature and cost of the action needed under this part;
> (2) The overall financial resources of the site or sites involved in the action; the number of persons employed at the site; the effect on expenses and resources; legitimate safety requirements that are necessary for safe operation, including crime prevention measures; or the impact otherwise of the action upon the operation of the site;
> (3) The geographic separateness, and the administrative or fiscal relationship of the site or sites in question to any parent corporation or entity;
> (4) If applicable, the overall financial resources of any parent corporation or entity; the overall size of the parent corporation or entity with respect to the number of its employees; the number, type, and location of its facilities; and
> (5) If applicable, the type of operation or operations of any parent corporation or entity, including the composition, structure, and functions of the workforce of the parent corporation or entity.

707, 714 (D. Colo. 2004).[24] This rule is generally applied in wheelchair cases, but may also apply to cases in which a disabled person's access to goods or services is impeded because their body frame is wider as a result of obesity caused by an underlying physiological disorder. Considering this claim in the light most favorable to Plaintiff, it is not implausible that narrower aisles in a plus-size clothing area would deny the full and equal enjoyment of the goods or services to individuals that are disabled due to their physiological obesity. Anderson therefore sufficiently alleges (at the pleading stage) ADA Title III discrimination with regard to the width of aisles within the women's plus-size clothing department, at least sufficiently enough to overcome a motion to dismiss.

Anderson then goes on to claim that Kohl's provided a "different or separate" benefit as to plus-size clothing in violation of 42 U.S.C. § 12182(b)(1)(A)(iii), and that the stores did not provide goods and services "in the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B).[25] According to the Supreme Court, the "most integrated setting" is defined as "a setting that enables individuals with disabilities to interact with non-disabled persons to the fullest extent possible." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 592 (1999) (quoting 28 CFR pt. 35, App. A, p. 450 (1998)[26]). However, Plaintiff does not allege that she was not able to interact with non-disabled persons in the Kohl's stores, or even that only similarly disabled

---

[24] *See* 28 C.F.R. § 36.304(b) ("Examples of steps to remove barriers include, but are not limited to, the following actions-- . . . (4) Rearranging tables, chairs, vending machines, display racks, and other furniture."); 28 C.F.R. § 36.304(c)(2) ("a public accommodation should take measures to provide access to those areas of a place of public accommodation where goods and services are made available to the public. These measures include, for example, adjusting the layout of display racks."). The Regulations note, however, that "[t]he rearrangement of temporary or movable structures, such as furniture, equipment, and display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space." 28 C.F.R. § 36.304(f).

[25] *See* 28 C.F.R. § 36 app. C ("The ADA recognizes that the provision of goods and services in an integrated manner is a fundamental tenet of nondiscrimination on the basis of disability. Providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens.").

[26] This language is now located in 28 C.F.R. pt. 35, app. B. Under 42 U.S.C. § 12134, the Attorney General "shall promulgate regulations" to implement Title II of the ADA. These regulations are listed at 28 C.F.R. 35 *et seq.*

persons shop in the plus-sized clothing department.[27] Both disabled and non-disabled individuals may shop for and buy plus-sized clothing, just as both obese and non-obese persons may shop for and buy plus-sized clothing.[28] Consequently, disabled persons necessarily shop alongside non-disabled persons both within the plus-sized clothing section as well as in other departments, and Anderson does not allege that she has been denied an opportunity to access any other areas within the involved stores.

Finally, Plaintiff's argument that Defendant violates Title III of the ADA because the selection of plus-sized clothing at Kohl's stores is smaller than other clothing departments also fails to state a legally cognizable claim. As noted above, Title III of the ADA does not require places of public accommodation to "alter the nature or mix of goods that the public accommodation has typically provided." *Ford*, 145 F.3d at 613; *see also PGA Tour*, 532 U.S. at 698.[29] Thus, the allegation that Defendant's smaller selection of plus-sized clothing violates the ADA is also dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, Kohl's Motion to Dismiss for lack of standing is granted without prejudice.  Plaintiff shall have 30 days from the date of this Court's Order to file an Amended Complaint setting forth in detail the factual basis, if any, for Anderson's individual standing to assert her one remaining claim related to the width of the aisles in the plus-sized women's clothing section, and as consistent with this Opinion. Moreover, all of Anderson's

---

[27] Nor can her Amended Complaint be read to allege such things, even under the most liberal construction. In fact, in her Sur-Reply, Anderson notes that "it is true that some individuals who shop in the plus sized department are not disabled." ECF No. 9 at 2.

[28] Such as for gifts to plus-sized friends or relatives.

[29] Anderson also does not allege that Kohl's refused to order special goods at her request. *See* 28 C.F.R. § 36.307(b) ("A public accommodation shall order accessible or special goods at the request of an individual with disabilities, if, in the normal course of its operation, it makes special orders on request for unstocked goods, and if the accessible or special goods can be obtained from a supplier with whom the public accommodation customarily does business.").

ADA claims are dismissed with prejudice for failure to state a claim, other than that claim alleging that the aisles in Kohl's "plus-sized" women's clothing department are materially narrower in a manner violative of Title III of the ADA. Finally, all claims for monetary relief are dismissed with prejudice.

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: May 3, 2013

cc: All counsel of record
Christina Anderson, *pro se*